May it please the Court, Deputy Attorney General Gabriel Bradley for the State. I'd like to reserve seven minutes for rebuttal. All right. I'll try to help you out, but keep your eye on the clock as well, please. Of course, Your Honor. The District Court made numerous errors requiring reversal. The most serious of these are assuming that Scott's confession was somehow inadmissible, failing to properly analyze prejudice for each of trial counsel's supposed deficiencies, and ignoring facts that show how trial counsel's decisions were reasonable under the circumstances. Starting with the admissibility of the confession, there was no evidence of police coercion during the interrogation. Scott told his attorney he committed the crimes and that the police reports were accurate. A competency evaluation conducted shortly after the interrogation revealed no signs of psychosis, PTSD, or any other mental illness. Indeed, the evaluation found that Scott was exaggerating his symptoms. And this was confirmed when Scott admitted to his attorney that he had faked mental illness during the interrogation. Part of it is what is the standard there? Because, I mean, I do think there was evidence on both sides of it, but the original court found it, there was no coercion, right? Yes. And that went up on direct appeal? The question about the Miranda, or the coercion? Yeah. That was in the second and third state habeas petition. So it did not go, there was no direct appeal on that issue? That's correct. Okay. And so what is the standard that we're looking at? I mean, where there's evidence on both sides, what is the district court? Did he commit a factual error or did he commit a legal error because he misapplied the law? So the standard is the doubly deferential standard under AEDPA. And so, yes, it is a legal error that the district court committed by failing to give the appropriate deference. The district court was required to give deference to the reasonable decisions of trial counsel under Strickland, and the district court was required to give deference to the reasonable determination of the California Supreme Court in rejecting this claim on state habeas review under AEDPA. And in this case, the district court has failed to give both levels of that double deference that was due. How many, I'm sorry, go ahead, Judge. How many, so this is a cumulative error analysis, and if we were to, for the sake of argument, conclude that the district court erred in finding error on certain grounds but not others, is there a metric or how many grounds do we need before there's cumulative error that would require affirming and granting the writ? So it would be the familiar Strickland standard, which is a reasonable probability of a better outcome at trial. So if there were prejudice sufficient to meet that standard of a reasonable probability of a better outcome for Scott at trial, then that would, under Strickland, justify a grant of relief. Even with just one ground for relief? Certainly. Certainly. That's the standard, is reasonable probability of a better outcome. If Scott can meet that standard, then Scott would be entitled to relief. Here, under the facts of this case, he can't reach that threshold of reasonable probability of a better outcome. On any of them? On any of them. But here's where I'm confused on this cumulative error, because as I understand the cumulative error argument, we could theoretically say there was no error on each of these seven. How many were there that the district court found? Eight. Eight. So the district court found eight errors, and he also found cumulative error is one of those eight, right? Cumulative error is one of those eight. Okay. So we could say there's no error on any of these seven, but somehow combined almost errors could still meet cumulative error? Is that what the law is? It's not, Your Honor. I think it might be in the Ninth Circuit. Well, so Strickland says that in order for it to be an effective assistance of counsel, you need to have both prong-satisfied deficiency and prejudice. If you have a deficiency that has no prejudice, then it's not a Strickland error. So when you're looking, even at looking at accumulating prejudice, if you don't have a Strickland problem to begin with, there's nothing to add. Then what work is cumulative doing? That's what I'm confused on, because we have case law that says cumulative error is a ground. But it's not clear to me what work that's actually doing, because as you pointed out, if we find one of the other seven errors, you could grant the writ anyway. The only way cumulative error is actually doing any work on its own is if we said there's no other error, but somehow we get to cumulative error. Have we said that before? There's no actual error, but it's all bad enough that we're going to put it together to accumulate it. So I think you're raising exactly why there's a circuit split on this issue.  I understand there's a circuit split. This is the difficulty that leads to that circuit split. And Strickland itself acknowledges that the two prongs are interrelated, that something that you can't separate them with a complete wall between them, because something, whether it's deficient or not, is going to depend on how big of a deal to the outcome of the trial it is, and whether it's prejudicial is going to determine how badly the attorney's going to judge. I'll ask you a question, and I want opposing counsel to think about this. Is there a case in the Ninth Circuit where we have said there was actually no underlying error, but there was cumulative error? I'm not aware of such a case. But if accumulating prejudice is the right approach, assuming that that is the right approach, you still need to get to the Strickland threshold, which is a reasonable probability to undermine confidence in the outcome. And that, you can't get to that here. And the reason you can't get to that here is because none of these errors, I guess what I could say, and it's not a numeric standpoint, but let's say you had one error that was 25 percent there, one that was 25 percent there. You could add those together. If you add them up and it's 100 percent of the Strickland threshold, that's fine. But if you start with zero percent there, plus zero percent there, plus zero, you're going to end up with zero still, and that's what we have in this case, particularly in the face of a confession, a detailed confession, consistent with the physical evidence. He showed up to the sheriff's department wearing the clothes the victim had described. He had scars on his hand that were consistent with the victim's description of the victim or of her attacker. So is that, in the State's position, is that the easiest way to slice through this case is just say there was no prejudice? I mean, could we theoretically go through that and say, look, we don't know if there's any error on these seven or we don't have to decide it because there was so much overwhelming evidence that there was no prejudice. Is that a way that we could address this case or not? That is absolutely a way that this Court could address that case. That's the way the California Supreme Court addressed the claims of ineffective assistance of counsel that were raised in the first State habeas petition. They did not decide the deficiency issue. They analyzed prejudice, found that in light of the overwhelming evidence, including the confession, that there was no chance of a better outcome, and so they denied the writ on those grounds. That was a reasonable decision by the California Supreme Court, and that reasonable determination by the State court was entitled to deference in the district court here. So if we concluded that the State waived any argument about deficient performance on the claim that counsel failed to adequately investigate and present a mental State defense, I'm assuming from what you've just said the State's position would be that wouldn't matter because there would be no prejudice? There would be no prejudice even if it were considered error for trial counsel to not have done more investigation on a potential mental defense. There would be no prejudice here. And even if the State waived it by not raising it in their opening brief? Well, we certainly did not waive our prejudice argument, and the prejudice argument is positive. No, I'm talking about the first prong of Strickland, the deficient performance. So but your position from what you said to Judge Nelson was cut through all of that and said it didn't matter if they had established the first prong or we didn't have to determine the first prong because we could say no prejudice. Yes, I would say even if it were determined that this, and I'm not conceding that we have waived that, but even if it were determined that that argument had been waived, the prejudice argument is dispositive. Going back to Strickland where that's one of the requirements to granting relief for ineffective assistance of counsel. Well, you didn't address it in the opening brief. Was it because the state court also assumed that counsel may have been ineffective in failing to do a deeper investigation into his mental state? Well, that's not what the— They went to the prejudice prong only. Yeah, they did. And that is an analytical approach that is endorsed by Strickland itself that says that if either deficiency or the prejudice prong is easier to analyze, it's okay to deal with that because they're both a requirement for relief. So either prong is dispositive if petitioner fails to meet his burden. And so the California Supreme Court did not rule on that, and they didn't need to. It was reasonable for them to take the approach they did. It's specifically endorsed by—  Well, the state court was pretty critical of the failure to investigate further as to the mental condition, right, in thinking about, as you said, the evidence as to identity of the perpetrator was pretty compelling. There wasn't a whole lot defense counsel can do other than try to negate the intent element, right? So this is where the mental health evidence potentially could be really helpful at the trial. Yes, the intent element as well as the causation element, and then, of course, it's clear that trial counsel was attempting to bring in mitigating facts that would have been relevant to penalty phase in his guilt phase presentation. So, I mean, there's ways that trial counsel could approach this, and the way that trial counsel chose here was reasonable. Well, I guess what I'm trying to say, although maybe not as well as I had intended to, is that in a case like this, there aren't a whole lot of alternatives for defense counsel other than to try to negate the intent to kill, which then would essentially take the death sentence off the table. That's true. And one of the things— So what did counsel do in an effort to negate the intent to kill element? So one of the things that's really remarkable about this case is there was a full-blown hearing on exactly that question on the issue of failure to investigate mental defenses. So unlike in some other ineffective assistance of counsel cases, we're not limited to the trial record here. We had an evidentiary hearing, lengthy. Petitioner had a chance to put on a lot of evidence, and it was overseen by a trial judge. California Supreme Court then reviewed those findings and endorsed them fully. And so here there is a robust record that specifically goes to the prejudice issue. And, yes, they said it was a close question, as exact words of the California Supreme Court, it was a close question on whether trial counsel should have done more investigation but was also very, very clear from the California Supreme Court's findings here, the factual findings, is that had he done so, he would not have discovered grounds for a better defense or a better alternative, and certainly not enough to move the needle to the Strickland threshold of a reasonable probability to undermine confidence in the outcome of the trial. So what is that best case that he could have put on had he done the appropriate investigation? So now I'm going to the prejudice element. He would have gotten his expert to say that the defendant was in a disassociative state at the time that the crime was committed? Yes, his best case would have been to get an expert like Dr. Pettis, the expert who gave a declaration and who also testified at the reference hearing, to opine that he was in a psychotic or dissociative state at the time of the offense, and therefore that would have undermined his ability to form an intent to kill. That state would be induced by drug use? Drug use or there was – Mental illness? He's not actually been diagnosed with a mental illness, and Dr. Pettis didn't even go that far as to give him a specific diagnosis. He said he diagnosed him with symptoms, certain symptoms related to having experienced trauma in his youth. But, yeah, looking at what is the best case for the petitioner, had his attorney tried to present such a defense, it would have been somebody like Dr. Pettis or maybe Dr. Pettis coming in and testifying to the trier of fact. He was in a dissociative or psychotic state during the crime, and that undermined his ability to form the intent to kill. And tell me why that evidence wouldn't have undermined the intent to kill. Well, so – and this is where we get to – this is where EDPED becomes very important that we have deference to factual findings because there was a factual finding as to this. Dr. Pettis was found not credible at the state court hearing. It was found that his opinion was based on an examination done of a petitioner years after the offense, and it also relied on information from petitioner's family, which was found to be recently fabricated. So that's why I say that this is a remarkable case where we have this in-depth fact finding. We have a factual finding that this was not credible. The federal district court below, it took that on, didn't it, and said that that factual finding was clearly erroneous, or did it not? Did it ignore it? The district court did find – district courts ruled that the 2254D deference had been undermined. They said that the requirements had been satisfied to undermine that level of deference, and so the district court applied a de novo review using the strictness standard. And so you would argue that that was legal, that the federal district court engaged in legal error when it did that because it didn't accord the double deference to that factual finding? Yes, by substituting its view of the facts for the factual findings of the state court. That's a legal error under EDPED. What is the standard for reversing under EDPED a factual finding like that? Can you ever do that? So it's in 2254D, which would have to be – yeah, if the state court applied a clearly erroneous federal law. But that's why I'm asking about the factual. We get the legal arguments a lot. I haven't seen it so much under the – where a federal district court on habeas just takes on a factual finding and rejects it. And so I'm less clear. Especially a credibility determination. That seems even more difficult for the district court to reject from the state court. I completely agree with you. I mean, that's where we come to a real problem with the district court's ruling is – Can you help us out? Sorry, I didn't mean to cut it off, but this leads to a bigger question, which is, is there something going on that we need to know about? Like, we read the briefs, and if there's anything you can tell – but it's unusual for a district court to grant habeas on seven issues. Usually, if that happens, it comes up and you're pretty confident. There seems to be something else going on in this case. The district court was very – was he just convinced that this guy was innocent or hadn't received due process? Is there anything more? Were you before the district court? I wasn't, and even if I were, I wouldn't presume to speak for – I just wonder if there's something more we need to know that's going on here that we're not aware of. I can say that I've read the ruling, obviously, as you all have, and what I would say is what's going on here is clear from the face of the ruling. He didn't analyze prejudice for any of these claims leading up to it. And so you try and aggregate all these supposed deficiencies in trial counsel's performance, but the problem is you don't do that Strickland analysis to say, what is the impact of these supposed deficiencies? And so then you're left with the only prejudice analysis is the cumulative prejudice analysis. If it turns out that that was done incorrectly, which it was here, then you don't have sort of a fallback about these individual – it would have been different if he had done each individual claim, and then also, by the way, I'm going to do cumulative prejudice analysis. Then there's maybe a fallback position here, but here there's a ripple effect to using this cumulative prejudice approach, which is that even if some of these other arguments about supposed deficiencies, even if they have some merit to them, there's no prejudice analysis to back that up. Specifically, the argument to waive jury, the prejudice there is purely speculative. The idea that there would be a better – that he would have gotten a better outcome in front of a jury instead of a judge, there's been no finding as to that. It's just pure speculation. And same thing with the idea that there's a third-party culpability defense that could have been viable. Specifically, the person they're trying to use as the third-party culpability person, Mr. Johnson, it's in the victim's description. She says Johnson, rerun, he's fat. Scott is thin. There's just even that – there's no possibility that that's going to be a successful – I'll say that seemed – that was the one that gave me the most concern, though, are the arguments, because, I mean, you agree that if there was medical negligence, that would have been irrelevant. That would have been a basis to grant habeas relief, right? If – you're saying if there had been medical negligence? Well, yeah, I guess that's too amorphous of a question. It had to be medical negligence that – and this is where we have to be careful – that was the sole cause of the death? I believe the California State law is that if it's grossly inappropriate, it becomes – it can become a superseding cause of death, which would then make – But what's the standard there? Is it contributing or sole contributing? I think the case law says grossly inappropriate or grossly incompetent.  Superseding cause. Grossly incompetent such that it becomes a superseding cause. So clearly the victim was severely injured when she was burned, but the defense theory was she would have survived but for medical negligence. And because of the negligence and not detecting urine output and, you know, her lungs filling and all of that, she died. And so that was the cause. That was the superseding cause of her death. And I recognize there's quite a bit of testimony in the trial transcript, something like 400 pages of medical records opining on the care she received. So I thought that Petitioner's argument was not that it was necessarily true that it was a superseding cause, but that defense counsel sort of pinned his hopes on, you know, fleeting argument that it wasn't going to succeed and that it wasn't a valid argument to make. Yes, that was the – yes. So that's the criticism, right, is that had he – is that ordinary medical negligence isn't enough and having it be a contributory cause isn't enough. And so under – that's why Petitioner contends at this point that that was a forlorn hope doomed to fail from the beginning. And the California Supreme Court said even if it was, even if that's true, that there's still no prejudice under Strickland because picking a bad strategy when there aren't good – when there isn't a good strategy available, that's not an effective assistance of counsel. That's not – Didn't it have sort of a sort of downstream effect in that after counsel decided to use that strategy, he then decided to counsel the petitioner to not have a jury, to have – to present this medical negligence defense before a judge. And so, you know, if that – if it's a doomed strategy and then it leads to giving up his right to a jury, it seems that that could lead to some prejudice. I mean, instead of convincing 12 people beyond reasonable doubt of his guilt, the state only had to convince one. That is Petitioner's contention. What that ignores, however, is the fact that these horrific facts also get to get tried in front of a court instead of 12 jurors from the Antelope Valley part of Los Angeles County where the trial counsel had a lot of familiarity and was concerned that the jury pool there would be leaning conservative. And so he talked about how not wanting to put this case in front of a jury from that jury pool was also a factor in advising the waived jury. But you're right. The choice of a medical negligence defense was the main reason why he advised to waive jury. But the fact that there would have been other fact-finders, lay fact-finders instead of a trained judge, that doesn't necessarily—we're still left speculating about the— So how can they prove that the result would be different? I mean, isn't it always going to be speculation because this is a trial that he had? So how do you know unless you reach right in front of a jury? I'm sort of hung up now on how we conclude whether there was prejudice. How certain do we have to be that there would be a different result? Well, so the cases that the district court cites in that point are— those are cases where there was not speculation about prejudice. Those are cases where—so there was a case that the district court cited where there was a complete failure to file notice of appeal. So it completely gave up the right to it. So that's not a situation of going in front of one— it's not a forum selection issue of trier of fact being the court, trier of fact being the jury. That's a question of there isn't a case. And so in that case, the Supreme Court said that we presume prejudice, right? And other cases where there's—the record shows prejudice, where giving up an advantageous plea bargain and getting a worse sentence at trial, then it's not—you're not speculating at that point with that record about what the prejudice would be. So there are cases where advice during the plea bargaining process or in the pretrial process where the record can support finding of prejudice or in the case where there's a total waiver of the right to appeal, then that would be a situation where there would be a presumed prejudice. So there are cases where you could have prejudice, just not this case. I know you're down to about six minutes, and you wanted to save some time. I do want to save some time, although I sensed we were going to get into the third-party culprit. I sensed that Judge Nelson had a question about that. The third-party culprit? Oh, I mean, I'm happy to wait for rebuttal if you want. Very well, then. Thank you, Your Honor. Good afternoon, and may it please the Court. Emily Grondyke on behalf of Petitioner Appellee James Scott. The Supreme Court instructs that habeas relief is restrained to extreme malfunctions of the legal system. The district court correctly found that this is just such an extreme case. Trial counsel selected the medical negligence defense that was foreclosed by the facts and the law as they were known at the time. And then in light of that fundamentally unreasonable decision, he forewent all other investigation, all other research, and as Your Honor pointed out, made a series of important decisions, including waiving the right to jury. Didn't that defense advance the ball? Because the prior fact, the judge did find that there was negligence, medical negligence, and that it did contribute to her death, right? It just didn't go far enough to be the superseding cause, so therefore he was still convicted. So I'm not given the options that counsel had, setting aside whether he should have conducted a much more in-depth investigation into the mental state issue. I don't know that that was so unreasonable, especially with the double-deference standard that we have to deal with here. So, Your Honor, the state of the law was that if the injury was an injury that could cause death, then no amount of negligence, including gross negligence, would be adequate to sever the chain of liability. So, and we cited the California case law in the briefing. So in this case, when counsel was presented with a situation where the victim was unconscious in bed and the bed was then set on fire, and she had burns on three-fourths of her body, I believe, even a layperson could understand that that's an injury that could cause death. But beyond that, there was a declaration before the Supreme Court with the habeas from Dr. Unger, who was a doctor that counsel consulted. And Dr. Unger said he informed counsel that that was not going to work as a defense. So in this situation, counsel, I think even without medical advice, could have understood that this was not going to fly. But what was the better option? I mean, we hear these cases all the time. Counsel's making the best assessment they can. And I've got to be honest. I would have thought that the medical negligence claim had some weight. You know, you raise an interesting question about how high the standard really was under California law. But what were the better options that he thought? So I think a reasonable attorney would have ended up with a few options. If a reasonable attorney would have investigated and challenged the confessions. And as the district court correctly pointed out, the State would have borne the burden to demonstrate not only that there was no coercion, but also that that Miranda waiver was knowing and intelligent. In this case, there was no signed Miranda waiver for the first interrogation. And the police report showed that Mr. Scott was behaving so — in such a disturbed manner that police officers stopped the interrogation, brought his mother in to calm him down, and she told police that he needed psychiatric help. In face of those facts, a reasonable attorney would have filed a motion to suppress.  But counsel also had indications that his, I guess, multiple personality manifestation was fabricated, right? So counsel had to weigh that into the equation. Not necessarily, Your Honor. I mean, challenging the validity of a Miranda waiver and the State's ability to carry its burden on that point is something that a reasonable attorney could and would do, regardless of their opinions about the truth of the underlying facts stated in the confession. But I thought the State — the trial judge who sentenced, right? Or, I mean, this was tried before a judge. I thought the judge actually said she wasn't — do I have it right? That she wasn't relying on the confession. That she — I mean, I thought she sort of discounted that. I know she didn't exclude it, but I guess this comes back to the prejudice. Your Honor — Like, if you got rid of the confession, aren't you still struggling with a lot of evidence that suggests guilt here? So I have two responses to that, Your Honor. First, I believe what you're thinking of is that the trial court said that she was not considering the fact that defense counsel brought to her attention, which was that Mr. Scott had previously pleaded guilty to the attempted murder. She stated that she was not considering that. That's one element that the district court found unreasonable. But if that confession had been suppressed, or even if that confession had not been suppressed, but there had been a suppression hearing, Officer Snyder would have said what he ultimately did say in federal habeas, which is that he gave Scott details of the crime before that interrogation began. And with that fact alone, those confessions, purported confessions, look much less weighty and much less reliable than they do at first blush. And with that information, a defense attorney could have gone a few different ways. They could have said, well, I can challenge this confession to the jury or the fact finder, argue that it might have been suggested, argue it's not as meaningful as it looks, and attempt to create a reasonable doubt in the mind of one juror, which is what they needed to do. Alternatively, defense counsel could have said, well, knowing that there was some suggestion involved in these confessions, these confessions don't look inconsistent with a mental state defense. And they could have pursued that evidence and put that on. That's the kind of information that a defense attorney needs to make an informed decision about the strategy they're going to take at trial. So getting back to Judge Nelson's question about alternatives, because the state court did address the question of prejudice, and you did raise a cumulative prejudice argument. So let's assume that there were some errors along the way. We don't reach the first Strickland prong. We still have to apply a deference over the state court's determination of no prejudice, right? Yes, Your Honor. So can you get to the heart of it and tell me what your best argument is for prejudice? The district court correctly applied 2254d to the prejudice question, the cumulative prejudice question. It also specifically applied it to prejudice on the jury waiver. But if you're asking me to picture what this trial could have looked like, there could have been numerous consistent witnesses who testified about Mr. Scott's use of cocaine and PCP in the period leading up to the crime and even on the day of the crime. That evidence fed into Dr. Pettis' opinion that Mr. Scott was psychotic and dissociating at the time of the crime and the time of the confession. So this gets to a question that I raised with your opposing counsel, because it seems to me that the evidence tying him to the crime, establishing who the perpetrator was, was fairly compelling. So a reasonable strategy would be to try to negate the intent to kill. But the best that he could come up with is Dr. Pettis, who I thought was inconclusive on the question of whether he was capable of forming the intent to kill, right? Nobody said he has a multiple personality disorder. That's been ruled out, I think, even by the defense experts. So then what you're left with, as I understand the record, and please correct me if the case is more compelling for the defense than my recollection, is that you did come up with testimony that he was in a disassociative state, but according to the defense expert, it was not, let's say the opinion wasn't clear on the intent to kill element. Is that the best case? What Dr. Pettis testified at the state reference hearing is that in light of his psychosis and dissociative state, Mr. Scott was not capable of weighing right and wrong, and that it was not clear that he was capable of understanding the consequences of his actions. He did not opine on the ultimate issue, but I don't think that a California trial court would have allowed an expert to opine on the ultimate issue. So in light of that evidence, along with the consistent evidence of Mr. Scott's drug use, the question is, is there a reasonable probability that one juror would have harbored a doubt about his ability to form the intent to kill or his understanding of right and wrong? But how would you – how would counsel have explained the Petitioner's actions in setting the victim on fire, setting the bed on fire? Because the trial judge concluded that that was compelling evidence of his – of intent to kill and intent to cover it up, that he was attempting to just burn her up to cover the evidence, and found that that – I think the trial judge concluded that that was basically dispositive on the issue. So how would – how would trial counsel have gotten around that? Well, again, the trial court didn't hear any of this evidence about Mr. Scott's psychosis and dissociation, and the trial court didn't hear an expert opining that even under those conditions, while he could do those physical acts, he did not necessarily understand the consequences of his decision-making. So that's the evidence that would raise a reasonable doubt about whether he had that intent to kill. How do we look at the fact that the referee that was appointed rejected Dr. Pettis's testimony? How do we weigh that in now, because that evidence came up in the post-conviction proceedings, right? Yes, Your Honor. The State court's prejudice findings were unreasonable on several counts. First, throughout, both on deficiency questions and prejudice questions, the State court relied on Mr. Scott's purported confessions, but at the same time, the referee precluded any evidence that would undermine the validity of those confessions. Similarly, the State court dismissed the credibility of some of the lay witnesses claiming that they believed that Mr. Scott was innocent, while it precluded defense counsel from presenting evidence of third-party perpetrators. The State court also ignored substantial corroborating evidence that would have supported the testimony of those lay witnesses. For example, not only were those witnesses consistent with one another, they were consistent with statements made to the competency evaluators. They were consistent with Scott's statements to police on the day of his interrogation, with his statements to defense investigators. They were consistent with a 1986 prison record that noted that Mr. Scott had a history of hallucinations and paranoid delusions. The State court did not address any of that corroborating evidence. It was consistent with the testimony of Mr. Vargas, who also testified about Mr. Scott's inebriation on the day of the offense. That witness was someone that the referees explicitly found credible, and yet the State court wholesale rejected the testimony of Mr. Scott's friends and family members regarding his drug use and his mental health. Well, there was inconsistency. So some family members testified about drug use, and then I believe his stepfather said something different, and then the three sisters wanted to provide alibi evidence, but it was conflicting alibi evidence. And then the girlfriend of the other victim, the separate rape victim, testified that that was a consensual affair. And so going through the weight of all of this witness testimony, the referee rejected it. So why is that unreasonable? Well, the stepfather wasn't present near or leading up to the time of the crime. What he said is he didn't see Mr. Scott using drugs during childhood. It was evidence, exactly, and the evidence from the family. The family members weren't there either. There was all this background evidence of his abuse and trauma and how that affected his abilities to form the intent to kill and his dissociative state, and the referee rejected it. And so then we have to find that that was unreasonable, that the State court was unreasonable. Yes, the process the State court undertook by excluding Mr. Scott's evidence that would shore up his case while at the same time finding his case not credible, that was the unreasonable process. I'd also like to note, Your Honor, that defense counsel presented medical records from Mr. Scott's overdose during childhood, school records about CPS being involved in the household. Those were contemporaneous records that the State court did not address at all when it found those lay witnesses not credible. Can I ask about the cumulative prejudice claim? So I want to make sure I understand the framework. Is that a separate claim on its own, or the cumulative prejudice, you still have to find some other error? And if it fails under prejudice, you can accumulate the prejudice to support that error? Yes, Your Honor. So what would have to — of any Strickland claim, you have to demonstrate that counsel was deficient, which means they acted unreasonably, and that there was prejudice, a reasonable probability of a different result, which is a standard lower than a preponderance. Okay. So we would still have — in order to rule for you on cumulative error or prejudice, we'd still have to find some error. We can't say there was no error but they're all close enough. That's not your argument. What you would have to find, Your Honor, is that there was deficiency.  Trial counsel was deficient in some or all of these regards. But if it fails under prejudice, you can somehow accumulate them to say no one of these errors is — but I guess you can only accumulate prejudice as to those errors that we find. So if we looked at the seven errors and found, you know, three of them were — there was a difference in the prejudice from those three errors. We couldn't do it from the other nine. Correct, Your Honor. So — And you agree that there's a circuit split on this issue of whether you can — because I hadn't really thought about — well, let me — I asked the question, is there a case where we've actually used cumulative prejudice where we've said, hey, there wasn't enough prejudice on this claim — on this deficiency, but if you combine these three, there is? So I don't know the underlying facts. I know that what this Court said in Boyd v. Brown is that you analyze each of the claims to determine whether counsel was deficient, and then — but prejudice may result from the cumulative impact of multiple deficiencies. Our position is that's fundamentally consistent with the language of Strickland itself, which says that the question is whether there was a reasonable probability of a different result from trial counsel's errors. So that's an inherently cumulative question. Well, and it sort of doesn't matter. We've at least given a head nod. We've at least said that's the law here, that you can cumulatively combine prejudice in the Ninth Circuit. But other courts have said, no, that's not what Strickland has said. I also think, as we stated in our letter, the Supreme Court's recent decision in Glossop, in which accumulated prejudice not just from similar claims but from different kinds of claims, also supports the idea that at a minimum, you could accumulate prejudice from Strickland claims. I do want to briefly address the competency evaluations. This Court has repeatedly made clear that a competency evaluation is not a reasonable basis on which to rule out a mental state investigation. That's all the more true in this case. Those competency evaluations happened over a month after the offense. At that time, Mr. Scott was no longer under the influence of drugs and alcohol, and he was, importantly, taking antipsychotic medication at the time of that, those evaluations. So it's not surprising, then, that Mr. Scott was not psychotic at that time. Neither of the competency evaluators found that he was malingering mental illness. In fact, they found that he appropriately and accurately answered the competency questions, which supports the conclusion that he was not malingering. What Dr. Sharma said was that he endorsed symptoms not consistent with mental illness as a headache, that Mr. Scott, he believed Mr. Scott was exaggerating to wrap up the interview faster. So while they are distinct inquiries, I think a reasonable attorney in this case would have looked at those evaluations and, in fact, seen red flags that would have encouraged him to investigate further. Both of those competency evaluations acknowledge Mr. Scott's history of drug and alcohol use, including in the period leading up to the offense, including use of PCP, which causes psychosis. Both of those also included evidence of trauma in Mr. Scott's background. So a reasonable attorney looking at that would not say, oh, there's nothing to do with mental health here. A reasonable attorney would say, I need to investigate further and find out what happened. I keep coming back to cumulative prejudice, but now I'm starting to wonder, can we just decide this case on prejudice, say there was no, I guess we can still say there's no prejudice, even assuming that all the errors happened, but we'd have to say that, right? I mean, I guess I'm wondering, can we get away from looking at these deficiencies one by one? Because if there's a cumulative prejudice argument, doesn't that sort of force you to address which ones, whether there's a deficiency? Yes, Your Honor. You do have to find the deficiencies as well as the cumulative prejudice. And the state, the district court, excuse me, did explicitly apply 2254D to that question on the subclaims to which it should apply. I'll note that on the mental state, that review of deficient performance is de novo because the state court never reached that decision. On which one? I'm sorry. The failure to present, investigate, and present a mental state defense. Attorney, I'll also note on that that Your Honor has asked a number of questions about the state court's factual findings. The district court also applied 2254E to find that the state court's factual findings was incorrect by a standard of clear and convincing error to the extent that it should be. But how is that supported? I mean, clear and convincing error, I mean, I'm trying to analogize all these different standards, but like in the immigration context, we get up and the question is, is there substantial evidence? It means is there any evidence? Like you could weigh it and say, yeah, 70% goes one way, 30% goes the other way, but if you pick the 30%, that's okay. So how do we evaluate this standard? Because on all these claims, some of them were closer than others, but none of them seemed to be so clearly erroneous that it was just out of the realm of what a fact finder could have found. The district court found by a clear and convincing error standard that the reason that mental state evidence was not presented was that trial counsel didn't investigate it. So the court looked at the record and evaluated the state court's finding that one of the reasons that evidence hadn't been presented was that it was recently fabricated. So, but in getting back to the statutory language and our obligation to apply it, it's an unreasonable determination of the facts by the state, right? Setting aside what the district court did, because now we're de novo on that, in deciding whether the state made an unreasonable determination of the facts, what deference do we owe to the state? I guess that's the more pinpointed question. And in particular, when it comes to credibility determinations, how do we overturn that? So I think the language of the statute is all we've got there, which is that you've got to find that the state court decision was based on an unreasonable finding of fact. Right. Unreasonable determination of the facts. Here, there was a referee appointed, and the referee made factual findings in terms of who's credible, who's not, what weight to give Dr. Pettis' testimony versus the other doctors, and why Dr. Pettis' testimony didn't carry as weight because it relied on witnesses that the referee found not credible. How do we disturb those credibility findings? Well, Your Honor, this Court has found decisions based on unreasonable findings of fact in situations where the process was unfair in some fashion or where the state court ignored evidence that was before it. And I think both of those factors are true here. How was the process unfair here? Because the state court repeatedly excluded Mr. Scott's evidence, challenging the evidence against him, and then relied on the strength of that evidence in concluding that he couldn't make out his claims. For instance, it relied on the strength of the confessions to justify almost everything that trial counsel did and to find that there was no prejudice, but it didn't allow Dr. Pettis to explain his concerns about the voluntariness of the confession and the waiver. Similarly, it disregarded the lay witnesses because they believed in Mr. Scott's innocence, but they didn't allow defense counsel to present evidence of Mr. Scott's innocence. Those are the kinds of unfair structural problems. But what evidence of innocence was there? It didn't allow the defense to present evidence that Mr. Johnson was a police informant, that he was with Mr. Scott substantially more during the day than what he testified at trial, that the evidence that Ms. Jensen said that she knew her attacker and that she did not that — sorry. Ms. Jensen said that she did not know her attacker, but that she did know Mr. Scott? No. I thought she said she reckoned — I thought she said she didn't know her attacker, but she recognized that she'd seen him before. No, Your Honor. She said that she didn't know him, but that she could identify him. Regarding other individuals, including, I believe, Mr. Johnson, she said that she could recognize him. So Mr. Johnson lived in the same apartment complex?  And as the state's counsel has pointed out, the physical descriptions of Mr. Johnson and Mr. Scott are very different. And she said that the attacker said he was Rerun's brother, Tony. Rerun is Mr. Johnson's nickname, so she apparently knew that. So it seemed as if the testimony was pretty clear. If Mr. Johnson had been the culprit, if he had attacked her, she would have known it was him. She knew him. So if that's the evidence of innocence, there's nothing there. It's certainly not compelling. It wouldn't be unreasonable for the state to reject that. And it's also interesting that the multi-personality persona that Mr. Scott tried to suggest in his interviews was Tony. Wasn't that the name of his alternate personality? That is the name he purportedly mentioned during his statements. But, Your Honor, it's not that the state court heard all of the evidence and rejected it. It's that the state court limited Scott's ability to present that evidence. Also, specifically as to his sister... But the question with respect to prejudice is, if that had come in, would it have made a difference? And it doesn't seem that it could have, because it seems clear from the victim's own description of the attacker that it wasn't Mr. Johnson, that the state would not have been able to prove it was Mr. Johnson and that there was nothing to suggest it was him, even if he had been with Mr. Scott for more periods of time during the day and had used drugs with him and all of those things. I mean, there was also evidence that Mr. Johnson actually admitted his guilt to several other people. But again... To Mr. Scott's sisters, right? I mean, this was part of the testimony that the referee just found was not credible, that the family members were fabricating. That is what the referee found, and I'm arguing that that process and those conclusions were unreasonable. So Mr. Johnson, if he confessed to the crimes, he the victim was somehow unable to distinguish between a person who weighs nearly 300 pounds and a person who weighs 150 pounds, and someone who has scars on their hands and someone who does not. I mean, the physical description alone is just going to make it very difficult to suggest Mr. Johnson was the actual perpetrator, even if he had bragged about it in the community. Potentially, Your Honor. I mean, there could have been a discussion of the validity of Ms. Jensen's identification under pain medication, et cetera, her description. It's significant, though, that Mr. Scott was in custody at a time when Ms. Jensen was still awake, conscious, able to make statements, and the police never showed her a photograph of Mr. Scott to identify, never showed her a photographic lineup at all. So the evidence against Mr. Scott, although it's true that he was wearing attire similar to her description, is not as strong as it could have been if they were serious about investigating this. But again, Your Honor, even if you find the identity evidence not persuasive and think the State court was reasonable for rejecting it, the fact remains that all of that evidence is entirely consistent with presenting a mental state defense. What we have, and I think this is why the District Court was correct to think about this case as a cumulative prejudice case, is a situation where trial counsel didn't investigate the confessions, didn't investigate Mr. Johnson. That is to say, didn't investigate the State's key evidence. At the same time, he didn't investigate whether his client was innocent, and he didn't investigate whether his client had the required mental state. At the time of the offense, right, this is after 1982, it's 1986, so there was no diminished capacity defense available, so it had to be diminished actuality, right? And didn't Dr. Pettis' testimony support that? So what I pointed out to Judge Nguyen before, Your Honor, is that he stated that Mr. Scott didn't understand the consequences of his actions and was incapable of weighing right and wrong. So that's a diminished capacity defense. Well, that would have gone to the State's burden to prove that he had the intent to kill. The State had the burden on that. Yes, but you're saying that the trial counsel was unreasonable for not investigating a mental status defense, which sounds like would have been a diminished capacity defense, which wasn't available to him at the time. Well, no, Your Honor. It was unreasonable for failing to put the State to its burden of demonstrating that Mr. Scott had the intent to kill. And... Well, so the State puts on evidence that he lit the bed on fire and said in his confession that he did that, he agreed he did that to cover up the crime, and then So they've met their burden of at least making some prima facie showing of an intent to kill, and then Dr. Pettis is going to say, but he didn't have the capacity to do it, he had diminished capacity, which they couldn't offer. So, I mean, that leaves trial counsel. But what he didn't say capacity. What he said was he didn't understand the consequences of his actions and just that one particular moment. Could weigh right and wrong. So it's a diminished actuality defense at that particular point in time. I'm not sure it matters what words we put on it, because the substance of it is what he would have been allowed to testify about, not the ultimate question. And when he said unable to weigh the consequences of his actions, unable to understand right and wrong, that could potentially go toward an insanity defense or could have challenged the State's ability to prove that he had the intent to kill. In the mind of one juror, it could have raised a reasonable doubt about whether Mr. Scott had that intent. Any expert testimony to support an insanity defense? I didn't think any of them said that. They all dismissed the notion of a personality disorder and organic DNA. Understanding right from wrong is the essence of the insanity defense. And that's what he testified, is that Mr. Scott could not. Going back to what counsel did present, ultimately, he presented one expert witness who agreed with the State's theory of causation in the end. So as a result of this series of actions, what we have is a proceeding that was fundamentally not adversarial. And all of that took place in front of a single judge as the fact-finder who had been informed of Mr. Scott's prior guilty plea to attempted murder. This is not an adversarial proceeding worthy of murder charges in our system, worthy of a death sentence in our system. The district court, in light of these multiple compounding errors, concluded that it was left with the abiding belief that a miscarriage of justice had occurred. I urge this court to agree with that conclusion and affirm. Let me ask you one final question. I know I'm going to take you a little over time, but I'll give you that extra time to answer this question. I was trying to find the name of the doctor, and I don't have it handy, but at the actual trial, the defense did call a doctor who presented testimony that allowed defense counsel to argue the question of diminished actuality during the closing argument, right? I mean, that was an argument made.  No, Your Honor. All that the defense counsel presented was his medical expert, Dr. Ginsburg, who testified about causation, although ultimately, when he was shown all of the victim's medical records, he agreed that no malpractice had occurred. Oh, I see. So the doctor that was called went to the malpractice question, not to the mental. Yes, Your Honor. All that happened regarding Mr. Scott's mental state was that Mr. Johnson mentioned he had done cocaine with Mr. Scott on the day of the offense, and defense counsel sort of mentioned in closing argument, oh, maybe he didn't have the intent to kill. I see. So it was based on the drug use evidence that that counsel was able to make that defense argument? Well, it was based on the drug use evidence that came out from the State's witness, not from any investigation that defense counsel had presented. And there was substantial available additional evidence on that point. Right. Thank you. Let me see if my colleagues have any additional questions. Thank you very much. When looking at what trial counsel did do, trial counsel at the closing argument did argue that the use of drugs led to diminished actuality. Trial counsel also argued that the confession should not be considered reliable because it wasn't recorded and there was no verbatim statement signed by it. So a lot of these arguments that are being raised now is trial counsel should have done this, trial counsel should have done that. Well, trial counsel to a certain extent did do some of those things. Well, but, I mean, I think that's the problem is that in some ways I think what you just said actually undermines it because you raised the argument but didn't actually investigate to support the argument. That seems to be their claim. Well, and that's where we get into the issue of the findings here that additional evidence would not have made it stronger. I give you that, but I'm just saying, I mean, to a certain degree the fact that they raised it in closing actually hurts you because that suggests that these arguments had more merit and they didn't investigate them. We still have to decide what would have happened with the investigation, with their prejudice, all that. But I'm not sure that that's helpful to say, well, they did say this in closing. Well, it shows that he did the best he could with what he had. And it also, the other thing, too, that the California Supreme Court brings up is he kind of got to slice it a little bit, a little thin here where he got to make the argument of diminished actuality without having to bring in experts who would have shown that he had malingered this Tony persona or that he had faked the Tony persona. And that allowed him, at penalty, he even argued the split personality because the Tony testimony came in, but there was no litigation on the record of experts pointing out that the Tony thing was fake. So he was able to use it as an argument for why, at the penalty phase, for a reason to impose prison instead of death. So he did get to, what I'm saying is he did get to make the testimony. It changed both worlds for him. Absolutely, he did. And that's a reasonable determination because when it comes down to the Strickland deficiency, that's a reasonableness question here. And, you know, when we talk about trial counsel shouldn't have done medical negligence, instead he should have done mental state or he should have done third-party culpability, or maybe he should have done all three or just two or some mix of that. That's exactly the kind of second guessing that the Strickland standard says is inappropriate. That's even adding on the additional layer of deference that's required under AEDPA. So here the district court was required to give double deference, and when you read this opinion you can't help but wonder where is the deference? So, therefore, the judgment of the district court should be reversed. I have a question for you. If we were to do that, just for sake of argument, would we remand this for the district court to consider the other claims that they did not, the judge did not consider? Yes, Your Honor. There are unresolved claims at the district court level, and that's what we're asking for is reverse and remand for those claims to be adjudicated in the first instance. We can't just, we can't deny the petition. Pull out. As to these claims, it's a yes. I understand, but not, we can't resolve the case. It's going to go back for another life. Yes, yeah, it's de novo review of these claims, but there are unadjudicated claims at the district court, and that's why we're asking for that remedy. Thank you. Thank you very much. Thank you, Mr. Bradley. Thank you, Mr. Grondyke, for your very, very helpful arguments this afternoon. The matter is submitted, and we'll issue a decision in due course. Court is adjourned. All rise. Court for this session stands adjourned.
judges: NGUYEN, NELSON, BADE